Fulton County Superior Court
***EFILED***TV
Date: 7/7/2023 6:42 PM
Che Alexander, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| THOMAS "ENNIS" BRAGG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2023CV382448 |
| | ) | Civil Action No. _____ |
| vs. | ) | |
| | ) | |
| CHARTERUP HOLDINGS, LLC, ARMIR | ) | |
| HARRIS, and LUIS CARRANZA, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff Thomas "Ennis" Bragg, Jr. ("Bragg" or "Plaintiff") files his Complaint against

Defendants CharterUP Holdings, LLC ("CharterUP"), Armir Harris ("Harris"), and Luis Carranza

("Carranza") (collectively the "Defendants"), respectfully showing the Court as follows:

**INTRODUCTION**

1.

Forty-three (43) minutes before midnight, when several hundreds of thousands of unit

options were set to vest, CharterUP's CEO and CFO executed a cooked-up scheme to terminate

Bragg's employment for the purpose of preventing his options from vesting. As if that was not

bad enough, they then proceeded to confiscate several hundreds of thousands more already-vested

options, under the guise of a manufactured "for-cause" termination. As a result, this action is

brought against Defendants ALTERNATIVELY under Delaware law for breach of contract and

tortious interference with a contract, assuming the unit option agreement is governed by Delaware

law, OR, if the unit option plan at issue is governed by the Employee Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, then for benefits due under the unit option plan

1

and for Plaintiff's wrongful termination in violation of ERISA.  Plaintiff also seeks his attorneys' fees for being forced to litigate to seek recovery of the substantial losses he incurred as a result of Defendants' wrongful actions.

## JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over this action pursuant to Article VI, Section IV, Paragraph I of the Georgia Constitution.  This Court has concurrent jurisdiction over the ERISA claim pursuant to 29 U.S.C. 1132(e)(1).

3.

Venue properly lies in this court pursuant to O.C.G.A. § 33-4-1 (2) and Article VI, Section II, Paragraph VI of the Georgia Constitution, because the Defendants are located in Fulton County, Georgia.

4.

All conditions precedent to the institution of this suit have been fulfilled; Plaintiff has exhausted all required steps before filing this action, and/or further exhaustion would be futile.

## THE PARTIES

5.

Plaintiff Thomas "Ennis" Bragg, Jr. is a natural person who is now and has been a resident of the State of Georgia at all times relevant to the facts of this Complaint.

6.

CharterUP Holdings, LLC is a limited liability company formed under the laws of the State of Delaware.  CharterUP's principal place of business and corporate headquarters is located at 3525 Piedmont Road, Suite 5-210, Atlanta, Georgia 30305, and CharterUP can be served with

process via its registered agent, Armir Harris, at 3340 Peachtree Road NE, Suite 100, Atlanta, GA, 30326.

7.

Defendant Armir Harris is a natural person who is now and has been a resident of the State of Georgia.  Mr. Harris can be served with process at 3340 Peachtree Road NE, Suite 100, Atlanta, GA, 30326 and/or at 3344 Peachtree Road NE, Unit 3904, Atlanta, GA 30326.

8.

Defendant Luis Carranza is a natural person who is now and has been a resident of the State of Georgia.  Mr. Carranza can be served with process at 3344 Peachtree Road NE, Unit 3904, Atlanta, GA 30326.

**FACTUAL BACKGROUND**

9.

Bragg joined CharterUP's predecessor, Shofur, in November 2018 as its Chief Technology Officer.

10.

As an executive of CharterUP, Bragg participated in CharterUP's Executive Incentive Plan.

11.

During Bragg's tenure with CharterUP, Bragg was offered and accepted incentive plan units that vested between January 31, 2021 through October 31, 2022 totaling 660,000 units (this number was reduced in October to 469,057 pursuant to a partial option cancellation agreement, which is not in dispute).  An additional 338,000 incentive plan units that had been offered and accepted by Bragg were scheduled to vest at 12:00 a.m. on January 31, 2023. An additional 1,086,000 units were granted and slated to vest in tranches through January 31, 2024.

12.

During his employment with CharterUP, Bragg consistently received positive performance reviews. Indeed, Bragg's most recent performance review was on January 27, 2023 where he received "3" and "3.5" ratings. A "3" rating means that Bragg consistently met expectations and more specifically that his "performance has met expected standards and target dates" and that his "contribution has added value to CharterUP." A "3.5" rating is even higher than the "3" rating whereby not only did Bragg consistently meet expectations, but he also occasionally exceeded expectations. Bragg's performance review was completed by CharterUP CEO Armir Harris.

13.

Bragg's January 27, 2023 performance review included the following positive feedback:

Ennis, trust is not built quickly. It is built over time, and every interaction is an opportunity to earn trust. You have helped transform our company over the years, helped build the early phases of a marketplace with clear product market fit. Your hard work, dedication, and commitment has earned our trust and given us the trust necessary to continue growing CharterUP. We are grateful to have you as a colleague and trusted member of CharterUP.

14.

On January 29, 2023—two calendar days following this positive performance review— CharterUP presented Bragg with a proposed agreement seeking a release from CharterUP's prior agreement with Bragg regarding the vesting of his incentive units (the "Release Agreement"). CharterUP demanded that Bragg sign the Release Agreement by 6:00 p.m. on January 30, 2023— mere hours before Bragg was due to have 338,000 incentive unit options vest. The Release Agreement also sought to have Bragg delay the vesting of his 338,000 units for two quarters and to have him participate in the 2023 Incentive Plan, which was substantially less lucrative than the 2019 Incentive Plan.

15.

Bragg, being under no legal obligation to agree to the terms of the Release Agreement, declined to sign the Release Agreement and informed CEO Armir Harris of his decision at 6:11 p.m. on January 30, 2023.

16.

At 11:17 p.m. on January 30, 2023—only forty-three (43) minutes before Bragg's 338,000 options were to vest at 12:00 a.m. on January 31, 2023—CharterUP's CFO Luis Carranza sent Bragg an e-mail terminating Bragg's employment, purportedly "for cause" (though nothing even approximating "cause" was identified, explained, or outlined therein).  The termination e-mail also attached a separation agreement that had obviously been pre-prepared in anticipation of CharterUP's decision to terminate Bragg's employment.

17.

Upon information and belief, CEO Armir Harris made the decision to terminate Bragg's employment and directed and/or conspired with CFO Luis Carranza to carry out Bragg's termination.

18.

Upon information and belief, Defendants intentionally and wrongfully terminated Bragg's employment purportedly "for cause," in order to interfere with Bragg's contractual rights to the vested (and vesting) incentive units granted to Bragg as part of his compensation package.

19.

Bragg's Unit Option Agreement contains that following relevant provisions:

3.  **Termination of Option**. Except as provided below in this Section, this Option shall be immediately forfeited, along with any and all rights or subsequent rights related hereto, and may not be exercised after the date which is ninety (90) days after the Optionee's "Termination Date" (the date on which Optionee ceases to be

in the Continuous Service (as defined in the Plan) of the Company, or any Parent or Subsidiary), or, if earlier, the Option Expiration Date. Prior thereto, this Option shall continue to be exercisable, but only to the extent that it is vested on the Termination Date. The Managers shall have complete and absolute discretion to determine an Optionee's Termination Date.

(a) *Early Termination for Cause*. If Optionee ceases to perform services for the Company, or any Parent or Subsidiary, for Cause, this Option shall immediately be forfeited, along with any and all rights or subsequent rights related hereto, as of the Optionee's Termination Date, or, if earlier, the Option Expiration Date. For this purpose, "Cause" shall be defined as set forth in a written employment agreement between the Optionee and the Company in existence as of the Grant Date, or, if no such written agreement exists or if "Cause" is not defined in such written employment agreement, "Cause" shall be defined as set forth in the Plan … .

20.

The 2019 Unit Incentive Plan contains the following definition of "Cause":

2.4 **Cause** shall mean an act or acts by an Eligible Recipient involving (a) the use for profit or disclosure to unauthorized Persons of confidential information or trade secrets of the Company, a Parent or a Subsidiary, (b) the breach of any contract with the Company, a Parent or a Subsidiary, (c) the violation of any fiduciary obligation to the Company, a Parent or a Subsidiary, (d) the unlawful trading in the securities of the Company, a Parent or a Subsidiary, or of another entity based on information gained as a result of the performance of services for the Company, a Parent or a Subsidiary, (e) a felony conviction or the failure to contest prosecution of a felony, or (f) willful misconduct, dishonesty, embezzlement, fraud, deceit or civil rights violations, or other unlawful acts.

21.

Bragg committed none of the "cause" infractions outlined in the incentive plan. The purported "for cause" termination was merely a manufactured pretext for the unlawful termination because no "cause" existed as defined by the plan.

22.

Nevertheless, Defendants erroneously characterized their wrongful termination of Bragg as being "for cause" and thereby have taken the position that not only is Bragg not entitled to the vesting of the 338,000 incentive units scheduled to vest just minutes following his termination, but

6

also that he has forfeited all of his 469,057 previously-vested incentive units.

23.

Defendants' erroneous classification of Bragg's termination as being "for Cause" has resulted in CharterUP retaining all of the nearly a million incentive units that rightfully belong to Bragg as well as the cancellation of an additional 1,086,000 units that were slated to vest in tranches over the next calendar year.

24.

Upon information and belief, on or around October 26, 2022, CharterUP underwent a Change in Control event (as defined in the 2019 Unit Incentive Plan) upon the closing of the Series A deal with Tritium Partners, LLC ("Tritium").

25.

The 2019 Unit Incentive Plan contains the following definition of "Change in Control:"

2.5  **Change of Control** means either of the following:

(a) any transaction or series of transactions pursuant to which the Company sells, transfers, leases, exchanges or disposes of substantially all (*i.e.,* at least eighty-five percent (85%)) of its assets for cash or property, or for a combination of cash and property, or for other consideration; or

(b) any transaction pursuant to which Persons who are not current Unit holders of the Company acquire by merger, consolidation, reorganization, division or other business combination or transaction, or by a purchase of an interest in the Company, an interest in the Company so that after such transaction, the Unit holders of the Company immediately prior to such transaction no longer have a controlling (*i.e.*, more than 50%) voting interest in the Company.  . . .

26.

Upon information and belief, the Series A deal with Tritium resulted in the Unit holders of CharterUP immediately prior to the transaction no longer having a controlling (*i.e.*, more than 50%) voting interest in CharterUP.  As such, a Change in Control event took place and the vesting

7

of all of Bragg's unvested incentive units should have been accelerated at that time pursuant to the Acceleration language in Bragg's Unit Option Agreement.

27.

Bragg's Unit Option Agreement contains that following relevant provision:

In the event of a Change of Control as defined in the Charter Up Holdings, LLC 2019 Unit Incentive Plan (the "Plan"), subject to the terms of the Plan, this Unit Option Agreement and the Exercise Agreement, the Optionee shall be entitled to purchase, pursuant to the exercise of this Option, all (100%) of the Units subject to this Option on and after the date of such Change of Control (determined by the Company with respect to this Option and with respect to such Change of Control, but contingent upon the occurrence of the Change of Control) unless Optionee has ceased to be in the Continuous Service (as defined in the Plan) of the Company, or any Parent or Subsidiary prior to such Change.

28.

Upon information and belief, upon the occurrence of the Change of Control event in October 2022, all of Bragg's unvested units should have vested due to the acceleration clause in the 2019 Unit Incentive Plan.

29.

The 2019 Unit Incentive Plan and Option Unit Agreement documents contain two additional potentially-relevant provisions.  First, they contain a choice of law provision choosing Delaware law.  Second, they contain a provision purporting to disclaim (in certain circumstances that are not clearly applicable here), the application of ERISA law; upon information and belief, the 2019 Unit Incentive Plan and Option Unit Agreement are or may be governed by ERISA. Because it is unclear at this juncture which law applies, the following claims are brought in the alternative.

## **COUNT I – BREACH OF CONTRACT**

### **(Against CharterUP) (Under Delaware Law)**

8

30.

Plaintiff incorporates paragraphs 1-29 above as if set forth fully herein.

31.

Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages. *See Foraker v. Voshell*, 2022 Del. Super. LEXIS 282, at *18 (Del. Super. Ct. July 1, 2022).

32.

Per the terms of the 2019 Unit Incentive Plan and the Unit Option Agreement, Bragg was contractually entitled to the vesting of 338,000 units at 12:00 a.m. on January 31, 2023. CharterUP did not allow the 338,000 units to vest and wrongfully removed 469,057 already vested units from Bragg.

33.

CharterUP's actions of both failing and refusing to allow the 338,000 units to vest as required by the Plan and wrongfully confiscating the 469,057 units from Bragg that had already vested constitutes a breach of its obligation under the 2019 Unit Incentive Plan and the Unit Option Agreement.

34.

CharterUp also failed to accelerate all of Bragg's units upon the Change in Control event that took place in October 2022, thereby breaching provisions of the 2019 Unit Incentive Plan and Bragg's Unit Option Agreement.

35.

CharterUP's breaches have caused Bragg to be damaged, *inter alia*, in the amount of the full value of the vested units, the units that should have vested on January 31, 2023, and the units

that should have accelerated pursuant to the Change in Control.  Plaintiff is entitled to damages in an amount to be determined by the enlightened conscience of the factfinder, plus interest thereon.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL RIGHTS

### (Against Defendants Harris and Carranza) (Under Delaware Law)

36.

Plaintiff incorporates paragraphs 1-29 above as if set forth fully herein.

37.

Under Delaware law, to establish a tortious interference with a contract claim there must be: (1) a contract; (2) of which defendant was aware; (3) for which Defendant's intentional act was a significant factor in causing the breach of such contract; (4) without justification; and (5) which caused the Plaintiff injury.  *See Aero Global Capital Mgmt., LLC v. Cirrus Indus.*, 871 A.2d 428, 437 (Del. 2005).

38.

Defendants Harris and Carranza wrongfully terminated Bragg's employment for the purpose of confiscating Bragg's vested and soon-to-vest units, thereby resulting in CharterUP's breach of the 2019 Unit Incentive Plan and the Unit Option Agreement with respect to both Bragg's vested (469,057) and soon-to-vest incentive units.

39.

The 2019 Unit Incentive Plan and Unit Option Agreement are contracts.  Defendants Harris and Carranza were both aware of, but not parties to, these contracts.

40.

Defendants Harris and Carranza's actions—wrongfully terminating Bragg—were intentional and caused CharterUP to breach the 2019 Unit Incentive Plan and Unit Option

Agreement with Bragg, without legal justification.

41.

As a result of Defendants Harris and Carranza's actions, Bragg has suffered injury of the loss of the vested shares and the failure to receive those shares due to vest within minutes of Harris' and Carranza's wrongful termination of Bragg.

42.

Defendants Harris and Carranza's actions caused Bragg to be damaged in the full value of the vested units (469,057 units) and the units that should have vested (338,000 units), in addition to back wages, front wages, lost bonus opportunities, and additional units scheduled to vest through January 2024 (1,086,000 units).  Plaintiff is entitled to damages in an amount to be determined by the enlightened conscience of the factfinder, including interest.

## COUNT III – ATTORNEYS' FEES

### (Against All Defendants) (Under Delaware Law)

43.

Plaintiff incorporates paragraphs 1-42 above as if set forth fully herein.

44.

Under Delaware law, attorneys' fees may be assessed where the court concludes that a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *See Brice v. State of Delaware, Dept. of Corrections*, 704 A.2d 1176, 1178 (Del. 1998).

45.

Defendants have acted in subjective bad faith.  Plaintiff sought a resolution of his claims from Defendants prior to filing and initiating this lawsuit, but Defendants refused and forced Plaintiff to enforce these claims, which Defendants know or should know are valid, via litigation.

11

46.

As a result of Defendants' bad faith, Defendants have put Plaintiff to the unnecessary trouble and expense of having to engage counsel and to resort to litigation to enforce his legal rights against Defendants.

## COUNT IV – ERISA SECTION 502(a)(1)(B) – BENEFITS CLAIM

### (Against CharterUP)

47.

This Count is alleged in the alternative to Count I.  Plaintiff incorporates paragraphs 1-29 above as if set forth fully herein.

48.

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) allows participants of ERISA plans to enforce plan terms and to require that plan administrators meet their duties to provide plan benefits in accordance with the plan.

49.

CharterUP's actions resulted in Bragg being denied benefits that he was due under the 2019 Unit Incentive Plan and Option Unit Agreement, namely, the vesting of 338,000 units that were scheduled to vest only minutes following CharterUP's wrongful termination of Bragg, and confiscation of his already-vested 469,057 units.

50.

Further CharterUP's actions resulted in further denial of benefits to Bragg whereby his remaining 1,086,000 units, which were slated to vest through January 2024, were not permitted to vest thereby denying Bragg a benefit to which he was entitled under the 2019 Unit Incentive Plan.

51.

Finally, CharterUP's actions resulted in further denial of benefits to Bragg whereby his unvested units were not accelerated, as they should have been pursuant to the Change in Control provisions of the 2019 Unit Incentive Plan.

52.

Due to Defendants' unlawful actions, Plaintiff was injured and is therefore entitled to and seeks all available relief, including but not limited to the benefits denied to him, prejudgment interest, attorneys' fees/costs, and/or further appropriate equitable relief to be determined at trial, for his benefits claim under ERISA § 502(a)(1)(B).

## **COUNT V – ERISA SECTION 510 – TERMINATION/INTERFERENCE**

### **(Against All Defendants)**

53.

This Count is alleged in the alternative to Count II.  Plaintiff incorporates paragraphs 1-29 above as if set forth fully herein.

54.

Section 510 of ERISA states, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan[…] or *for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . .*"  29 U.S.C. § 1140 (emphasis added).  Section 510 claims are enforced via 29 U.S.C. § 1132(a).

55.

Defendants' purported "for cause" termination of Bragg was done in whole or in part to

13

interfere with Bragg's attainment of the 338,000 units that were slated to vest only minutes after his termination, to interfere with subsequent tranches of units (1,086,000) granted to Bragg and scheduled to vest through January 2024, and to interfere with Bragg's rights to the 469,057 units that had already vested.

56.

Bragg committed none of the "cause" infractions outlined in the incentive plan.

57.

Defendants' discharge of Plaintiff violated ERISA § 510, 29 U.S.C. § 1140 inasmuch as Defendants unlawfully discharged Plaintiff in order to interfere with his attainment of rights to which he was entitled or would become entitled under ERISA.

58.

Due to Defendants' unlawful actions, Plaintiff was injured and is therefore entitled to and seeks all available relief, including but not limited to back pay, front pay, lost benefits, prejudgment interest, attorneys' fees/costs, and/or further appropriate equitable relief to be determined at trial, for his wrongful termination under ERISA § 510.

## COUNT VI – ATTORNEYS' FEES UNDER ERISA SECTION 502(g)

### (Against All Defendants)

59.

This Count is alleged in the alternative to Count III.  Plaintiff incorporates paragraphs 1-29 and 47-58 above as if set forth fully herein.

60.

Title 29 U.S.C. § 1132(g) provides that the Court may award reasonable attorneys' fees and costs of bringing this action.

14

61.

Defendants' violations of ERISA and acts of bad faith have caused Plaintiff to incur litigation costs and attorney's fees to remedy the breaches herein.  This Court should award Plaintiff his reasonable attorneys' fees and the litigation costs and expenses of bringing this action.

62.

Accordingly, Defendants' conduct justifies an award of Plaintiff's expenses of litigation against Defendants, including his attorneys' fees.

WHEREFORE, Plaintiff respectfully demands that he be granted the following relief:

(a)     Equitable and/or injunctive relief, as appropriate, for Defendants' breach of contract, tortious interference with a contract, and ERISA violations;

(b)     Damages in an amount to be determined by the factfinder, for all damage caused by Defendants' breach of contract, tortious interference with a contract, and ERISA violations;

(c)     Reasonable attorneys' fees together with any and all other costs associated with this action pursuant to Delaware law or ERISA; and

(d)     Other and further relief as the Court deems just and proper.

**A JURY TRIAL IS DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 7th day of July, 2023.

/s/  Nancy B. Pridgen_____
Nancy B. Pridgen, Esq.
Georgia Bar No. 587949
PRIDGEN BASSETT LAW, LLC
138 Bulloch Avenue
Roswell, Georgia  30075
(404) 551-5884 direct
(678) 812-3654 facsimile
nancy@pridgenbassett.com

*Counsel for Plaintiff*

15

Fulton County Superior Court
***EFILED***TV
Date: 7/7/2023 6:42 PM
Che Alexander, Clerk



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM J2 C-103, ATLANTA, GEORGIA 30303
## SUMMONS

THOMAS "ENNIS" BRAGG, JR.,

) Case
) No.:     2023CV382448
)
)
**Plaintiff,** )
)
vs. )
)
CHARTERUP HOLDINGS, LLC, ARMIR )
)
HARRIS, and LUIS CARRANZA, )
**Defendant** )
)
)
)
)

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

Pridgen Bassett Law
Nancy B. Pridgen
138 Bulloch Avenue
Roswell, GA 30075    404-551-5884   nancy@pridgenbassett.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____7th_____day of___July_____, 20 _23_____

Honorable Ché Alexander, Clerk of

Superior Court

By_____

_____ Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you    _____, 20_____

Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

Fulton County Superior Court
***EFILED***TV
Date: 7/7/2023 6:42 PM
Che Alexander, Clerk



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM J2 C-103, ATLANTA, GEORGIA 30303
### SUMMONS

THOMAS "ENNIS" BRAGG, JR.,

) Case
) No.:     2023CV382448
)
)
**Plaintiff,** )
)
vs. )
)
CHARTERUP HOLDINGS, LLC, ARMIR )
)
HARRIS, and LUIS CARRANZA, )
**Defendant** )
)
)
)
)

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at
https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon
plaintiff's attorney, whose name and address is:

Pridgen Bassett Law
Nancy B. Pridgen
138 Bulloch Avenue
Roswell, GA 30075    404-551-5884   nancy@pridgenbassett.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed
within five (5) business days of such service. Then time to answer shall not commence until such proof of
service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN
AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This____7th_____day of__July_____, 20 _23_____

Honorable Ché Alexander, Clerk of

Superior Court

By_____*Tracey Vaughn*_____

_____Deputy Clerk_____

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you     _____, 20_____

Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM J2 C-103, ATLANTA, GEORGIA 30303
## SUMMONS

THOMAS "ENNIS" BRAGG, JR.,

**Case No.:** 2023CV382448

**Plaintiff,**

vs.

CHARTERUP HOLDINGS, LLC, ARMIR

HARRIS, and LUIS CARRANZA,

**Defendant**

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

Pridgen Bassett Law
Nancy B. Pridgen
138 Bulloch Avenue
Roswell, GA 30075    404-551-5884    nancy@pridgenbassett.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This 7th day of July, 20 23

Honorable Ché Alexander, Clerk of Superior Court

By _Tracey Vaughn_

Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

Deputy Sherriff

**Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used**

Fulton County Superior Court
***EFILED***KJ
Date: 3/13/2024 9:32 AM
Che Alexander, Clerk

Control Number : SOP-24030120

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
### 313 West Tower
### 2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

### CERTIFICATE OF ACKNOWLEDGEMENT

I, Brad Raffensperger, Secretary of State of the State of Georgia, do hereby certify under the seal of my office that copies of legal documents regarding service of process upon:

**CharterUp Holdings, LLC**

have been filed with the Secretary of State on 03/11/2024 pursuant to O.C.G.A. § 14-11-703(h) relating to the following matter:

Case: Thomas "Ennis" Bragg, Jr. v. CharterUp Holdings, LLC
Court: Superior Court of Fulton County
Civil Action No.: 2023CV382448

Witness my hand and official seal in the City of Atlanta and the State of Georgia on 03/12/2024.



Brad Raffensperger
Secretary of State

**SERVICE OF PROCESS**

*Electronically Filed*
Secretary of State
Filing Date: 3/11/2024 10:56:16 AM

## FILING INFORMATION

| | |
|---|---|
| Filing Type | : Service of Process |
| Control Number | : SOP-24050120 |

## DEFENDANT INFORMATION

The name of the business entity or individual (the "defendant") for which the Secretary of State is being served as statutory agent is as follows:

| | |
|---|---|
| Defendant Type | : Business |
| Defendant's Name | : CharterUp Holdings, LLC |
| Control Number of the Business Entity (if applicable) | : 19069491 |
| Registered Agent's or Defendant's Address Where Service Attempted and/or Forwarded | : 3340 Peachtree Rd. Ne, Ste. 100, Atlanta, GA, 30326, USA |

## STATUTORY AUTHORITY

Service is being made on the Secretary of State pursuant to the following O.C.G.A. section:

 O.C.G.A. § 14-11-703(h)

## CASE INFORMATION

The service of process filing relates to the following proceeding:

| | |
|---|---|
| Name of Plaintiff | : Thomas "Ennis" Bragg, Jr. |
| Style of Proceeding | : Thomas "Ennis" Bragg, Jr. v CharterUp Holdings, LLC, Armir Harris, and Luis Carranza |
| Civil Action Number | : 2023CV382448 |
| Court | : Superior Court of Fulton County |

## SERVICE OF PROCESS DOCUMENTS

See attached document(s).

## FILER's INFORMATION

| | |
|---|---|
| Filer Type | : Business |
| Name | : Pridgen Bassett Law |
| Address | : 138 Bulloch Ave., Roswell, GA, 30075, USA |

## AUTHORIZER INFORMATION

| | |
|---|---|
| Authorizer Name | : Nancy B. Pridgen |

Fulton County Superior Court
***EFILED***TV
Date: 7/7/2023 6:42 PM
Che Alexander, Clerk

**General Civil and Domestic Relations Case Filing Information Form**

■ Superior or ☐ State Court of __Fulton_____ County

┌─────────────────────────────────────────────────────────────────┐
│ **For Clerk Use Only**                                            │
│                    7/7/2023                   2023CV382448         │
│ Date Filed _____    Case Number _____       │
│            **MM-DD-YYYY**                                          │
└─────────────────────────────────────────────────────────────────┘

| **Plaintiff(s)** | | | | | **Defendant(s)** | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Bragg | Thomas | Ennis | Jr. | | Charterl | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | Harris | Armir | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | Carranza | Luis | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

Plaintiff's Attorney __Nancy B. Pridgen__    State Bar Number __587949__    Self-Represented ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

┌──────────────────────────────────────┐  ┌──────────────────────────────────────┐
│ **General Civil Cases**              │  │ **Domestic Relations Cases**         │
│   ☐   **Automobile Tort**            │  │   ☐   **Adoption**                   │
│   ☐   **Civil Appeal**               │  │   ☐   **Contempt**                   │
│   ☐   **Contempt/Modification/Other**│  │       ☐ **Non-payment of child support,** │
│       **Post-Judgment**              │  │       **medical support, or alimony**│
│   ☒   **Contract**                   │  │   ☐   **Dissolution/Divorce/Separate**│
│   ☐   **Garnishment**                │  │       **Maintenance/Alimony**        │
│   ☐   **General Tort**               │  │   ☐   **Family Violence Petition**   │
│   ☐   **Habeas Corpus**              │  │   ☐   **Modification**               │
│   ☐   **Injunction/Mandamus/Other Writ**│ │     ☐ **Custody/Parenting Time/Visitation**│
│   ☐   **Landlord/Tenant**            │  │   ☐   **Paternity/Legitimation**     │
│   ☐   **Medical Malpractice Tort**   │  │   ☐   **Support – IV-D**             │
│   ☐   **Product Liability Tort**     │  │   ☐   **Support – Private (non-IV-D)**│
│   ☐   **Real Property**              │  │   ☐   **Other Domestic Relations**   │
│   ☐   **Restraining Petition**       │  │                                      │
│   ☐   **Other General Civil**        │  │                                      │
└──────────────────────────────────────┘  └──────────────────────────────────────┘

☐   Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____        _____
        Case Number                      Case Number

☐   I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐   Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
        Language(s) Required

☐   Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20