**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| THOMAS "ENNIS" BRAGG, JR., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 1:24-cv-01464-AT |
| CHARTER UP HOLDINGS, LLC, | § | |
| ARMIR HARRIS, and LUIS | § | |
| CARRANZA | § | |
| Defendants. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT CHARTER UP HOLDINGS, LLC'S MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)**

**<u>INTRODUCTION</u>**

Defendant Charter UP Holdings, LLC now known as CharterUp Technologies, LLC ("CharterUP" or the "Defendant"), moves the Court pursuant to FRCP 12(b)(6) for an order dismissing with prejudice each of Plaintiff's Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* claims asserted and alleged within the Complaint of Plaintiff Ennis Bragg ("Bragg" or "Plaintiff"). Plaintiff's lawsuit seeks to recover alleged damages for purported "benefits" including CharterUP incentive unit options pursuant to the "CharterUP Holdings, LLC 2019 Unit Incentive Plan" (or "Unit Incentive Plan") and for

1

wrongful termination in violation of ERISA. Plaintiff has alleged six counts for: (I) common law breach of contract; (II) common law tortious interference with contractual rights (III) attorney's fees under common law; (IV) enforcement of plan "benefits" pursuant ERISA § 502(a)(1)(B); (V) interference with rights pursuant to ERISA § 510; and (VI) attorneys' fees pursuant to ERISA § 502(g). Defendant CharterUP[1] seeks dismissal of Plaintiff's ERISA claims – Complaint Counts IV, V, and VI.

CharterUP maintained a Unit Incentive Plan, but the plan is not organized and maintained pursuant to ERISA and is not otherwise subject to ERISA. Because the unit incentives, unit options claimed by Plaintiff, are not part of an ERISA governed plan or otherwise subject to ERISA each of Claimant's ERISA claims should be dismissed with prejudice.

## RELEVANT FACTS SET FORTH IN THE COMPLAINT

Bragg alleges in the Complaint (Armir Harris Declaration Ex. C) that he was hired by the predecessor to CharterUp[2] as its Chief Technology Officer in November

---

[1] As of the date of filing CharterUp is the only defendant party that has been served with the complaint in this matter. It is anticipated that if and when the other defendants are served they will join in the motion to dismiss.

[2] In December 2021 Charter Up Holdings, LLC merged with and into CharterUp Technologies, LLC, the surviving entity.

2018. (Cplt. At ¶ 9). Bragg alleges that as an executive he participated in CharterUP's Executive Incentive Plan. (Cplt. At ¶ 10). Bragg alleges that he was offered and that he accepted incentive plan units that vested between January 31, 2021 through October 31, 2022 totaling 660,000 units (this number was reduced in October to 469,057 pursuant to a partial option cancellation agreement, which is not in dispute), and an additional 338,000 incentive plan units that had been offered and accepted and were scheduled to vest on January 31, 2023, and that an additional 1,086,000 units were granted and slated to vest in tranches through January 31, 2024. (Cplt. At ¶ 11). Bragg alleges that CharterUP terminated his employment effective January 30, 2023, in order to prevent the vesting of his alleged incentive plan units or options. (Cplt. At ¶¶ 16, 18).   Bragg alleges that pursuant to the "2019 Unit Incentive Plan" and the "Unit Option Agreement" he was entitled to vesting of 338,000 units and that 469,057 units that had already vested were improperly removed. (Cplt. At ¶ 32). Bragg further alleges that by refusing to allow units to vest and by wrongfully confiscating additional units CharterUp breached the terms of the 2019 Unit Incentive Plan and the Unit Option Agreement.[3] (Cplt. At ¶ 33).

---

[3] The Complaint does not use defined terms.  However, the "2019 Unit Incentive Plan" referred to in the Complaint is the CharterUP Holdings, LLC 2019 Unit Incentive Plan and the "Unit Option Agreement" is the CharterUP Holdings, LLC 2019 Unit Incentive Plan Option Agreement.

Defendant disputes these allegations.

## THE CLAIMS

Complaint Count IV alleges a claim pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). The claim is predicated on the assertion that Plaintiff was denied benefits under the Unit Incentive Plan and the corresponding Option Unit Agreement that detailed the Unit Options issued to Plaintiff under the Unit Incentive Plan, including the denial of vesting of 338,000 units, the alleged confiscation of Plaintiff's already-vested 469,057 units, and the denial of vesting of additional units. CharterUp maintains the Unit Incentive Plan but it is not organized or maintained pursuant to ERISA or otherwise subject to ERISA claims. Because the benefits claimed by Plaintiff are not part of an ERISA governed plan, Plaintiff is without legal grounds to assert a claim under § 502(a)(1)(B) or any other section of ERISA, and Count IV should be dismissed with prejudice pursuant to FRCP 12(b)(6).

Count V sets forth a claim pursuant to ERISA § 510, 29 U.S.C. § 1140. The claim is predicated on the assertion that Plaintiff was wrongfully discharged in order to interfere with his right to receive plan units and/or the vesting of units. Because the benefits claimed by Plaintiff are not part of an ERISA governed plan and there is no other claim for which relief is provided under ERISA, Plaintiff is without legal grounds to assert a claim under § 510 or any other section of ERISA, and Count V

should be dismissed with prejudice pursuant to FRCP 12(b)(6).

Count VI is a claim for attorneys' fees and expenses pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and is necessarily predicated upon an entitlement to recovery under Counts IV and V. Since those Counts are subject to dismissal pursuant to FCRP 12(b)(6), no basis remains to support a cause of action under § 502(g), and Count VI should likewise be dismissed with prejudice.

## I.    Standard of Review On a 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows for dismissal of a case when the complaint "fail[s] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Claims are facially plausible when the plaintiff pleads facts that allow courts to draw a "reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 556 (2007). The Court, when deciding a motion to dismiss, should assume the factual allegations are true and determine whether, when read together, the factual allegations plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at

679. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC,* 600 F.3d 1334, 1337 (11th Cir.2010); *see also Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"). *See also, Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371 (11th Cir. 2010) (In its order, the district court relied upon Defendant CDC's supporting exhibits and its "statement of material facts about which there is no genuine dispute" derived in part from those exhibits.)

When deciding a motion to dismiss in the context of ERISA claims courts may consider extrinsic documents essential to the claims. *See, Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993) (Regardless of the alleged facts, however, a court may dismiss a complaint on a

dispositive issue of law); *Toohey v. Cigna Corp.*, 2009 WL 2169859, at *4 (D. Or. June 24, 2009) (rejecting argument that applicability of ERISA cannot be decided on motion to dismiss); *Houston v. Aramark Corp.*, 112 F. App'x 132, 135-36 (3d Cir. 2004) (affirming dismissal of ERISA claims where plan not subject to ERISA); *Maguire v. Medtronic, Inc.*, 2010 WL 744561, at *3 (W.D. Pa. Feb. 26, 2010) ("Because an ERISA 'plan' is necessary before ERISA's provisions apply, the court must first determine whether [a plan] is, in fact, an ERISA [plan]. If the answer . . . is no, then the court may dismiss the plaintiff's claims that he is entitled to benefits under ERISA.")

The Complaint repeatedly refers to and includes quotes from the CharterUP Holdings, LLC 2019 Unit Incentive Plan which the Complaint refers to as the "2019 Unit Incentive Plan."  (See for instance, Cplt.¶¶ 20 and 25.)  The Complaint repeatedly refers to and includes quotes from the CharterUP Holdings, LLC 2019 Unit Incentive Plan Option Agreement referred to in the Complaint and the "Unit Option Agreement." (See for instance, Cplt.¶¶ 19 and 27.)  Those are the documents that form the basis for Plaintiff's purported ERISA claims. Therefore, it is respectfully submitted that the Court may consider each of those documents in their entirety which are attached as exhibits to Armir Harris Declaration.

## II      DEFENDANT IS ENTITLED TO DISMISSAL OF THE ERISIA CLAIMS ASSERTED UNDER §502(a)(1)(B)

ERISA applies to employee welfare benefit plans and employee pension benefit plans. 29 U.S.C. § 1002(3).  Under ERISA, "[t]he term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both[.]" 29 U.S.C.A. § 1002(3).  "[E]mployee welfare benefit plan" is defined as follows:

> (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

The Unit Incentive Plan did not provide for employee welfare benefits.[4]

An "employee pension benefit plan" is defined  as one which "(i) provides retirement income to employees or (2) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  29

---

[4] The Complaint refers to ERISA "benefits" generically without specifying pension benefits or welfare benefits.

U.S.C. § 1002(2)(A)(i-ii).  The ERISA regulations exempt bonus programs from the definition of a pension benefit plan. 29 C.F.R § 2510.3-2(c) states:

> ***Bonus program.*** For purposes of title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.

## A.    THE UNIT INCENTIVE PLAN

The Unit Incentive Plan (Harris Decl. Ex. "A"), permitted certain employees to purchase an ownership interest in the "Company"[5] in the form of units of CharterUP, or options to purchase units as is the case here. The Unit Incentive Plan is not an employee pension benefit plan.  The purpose of the Unit Incentive Plan is *not* to fulfill one of the statutorily defined objectives of a pension benefit plan. Rather as stated in the first paragraph of the plan document:

> The purpose of this Plan is to promote the interests of the Company, and any Parent or Subsidiary thereof, by providing the opportunity to purchase or receive Units or to receive compensation that is based upon appreciation in the value of Units to Eligible Recipients in order to attract and retain Eligible Recipients and providing Eligible Recipients an incentive to work to increase the value of Units and a stake in the future of the Company that corresponds to the stake of each of the Company's

---

[5]   The Unit Incentive Plan at section 2.9 states: "***Company*** means Charter Up Holdings, LLC, a Delaware limited liability company, and any successor to such organization."  For ease of reference the "Company" may be referred to herein as "CharterUP" which, as the context requires, will include all successor entities.

> Unit holders. The Plan provides for the grant of Non-Qualified Options, Restricted Unit Awards, Deferred Units and Unit Appreciation Rights to aid the Company, and any Parent or Subsidiary thereof, in obtaining these goals.

(Harris Decl. Ex. A, p 1).  Moreover, the terms of the Unit Incentive Plan expressly state it is not an ERISA Plan.  As stated at ¶7.5 therein (Harris Decl. Ex. A. p. 14):

> **(h)** *No ERISA Employee Benefit Plan Created.* Except to the extent that the Board expressly determines otherwise in resolutions, a Deferred Unit must contain terms and provisions designed to ensure that the Deferred Unit will not be considered an "employee benefit plan" as defined in ERISA §3(3).

As discussed in the Harris Declaration, the Board of Managers of the Company ("Board") never determined otherwise in any resolutions that the Deferred Units at issue in this proceeding, the Unit Options set forth in Plaintiff's Incentive  Plan Option Agreement, were to be considered an employee benefit plan as defined in ERISA §3(3).

The Unit Incentive Plan provides for the discretionary grant of CharterUP unit incentives to select employees.  As stated therein, "The Board, in its complete and absolute discretion, shall grant Unit Incentives under this Plan . . ." (Harris Decl. Ex. A. p. 8, ¶7.1).

The Unit Incentive Plan provides for, *inter alia*, "the grant of Non-Qualified Options" under the terms and conditions set forth in ¶7.2 therein.  The unit incentives that are at issue in this proceeding are options to purchase units.  The terms of the

option grants to Plaintiff were set forth in the CharterUP Holdings, LLC 2019 Unit Incentive Plan Unit Option Agreement (the "Incentive Plan Option Agreement", Harris Decl. Ex. "B") which provides in pertinent part as follows:

> Charter Up Holdings, LLC, a Delaware limited liability company (the "Company"), hereby grants as of the date noted below (the "Grant Date") to the optionee named below (the "Optionee") an option (this "Option") to purchase the total number of Units shown below of the Company ("Units") at the exercise price per Unit set forth below (the "Exercise Price"), subject to all of the terms and conditions on the reverse side of this Unit Option Agreement and the Charter Up Holdings, LLC 2019 Unit Incentive Plan (the "Plan").

The Incentive Plan Option Agreement provided for the issuance of Incentive Plan Unit Options to Plaintiff.

Plaintiff alleges that he was offered and accepted incentive plan unit options that vested totaling 660,000 units (reduced to 469,057) between January 31, 2021 through October 31, 2022; and further alleges an additional 338,000 incentive plan unit options that had been offered and accepted by Bragg were scheduled to vest at 12:00 a.m. on January 31, 2023; and further alleges an additional 1,086,000 incentive plan unit options were granted and slated to vest in tranches through January 31, 2024.  The above referenced "Unit Options" are what are at issue in this proceeding.

Unit Options are granted and vest to the employee over time subject to certain

11

terms and conditions including, but not limited to, vesting conditions and continued employment applicable to participation in the Unit Incentive Plan.  (Harris Decl. Ex. A). Pursuant to the terms of the Incentive Plan Option Agreement, the Unit Options may be exercised prior to expiration under the terms therein. (Harris Decl. Ex. B ¶1). Moreover, the Unit Options are subject to forfeiture upon, among other things,  the expiration of the Unit Option or upon termination of the participant's employment. (Harris Decl. Ex. B ¶3.e.)

The Unit Incentive Plan is just that, an incentive plan, and it does not provide any pension or other retirement benefits. In light of the foregoing, the Unit Incentive Plan is not subject to ERISA because (1) it does not fit within the 29 U.S.C. § 1002(2)(A)(i-ii) definition of a pension benefit plan; and (2) it would be embraced by the bonus program exception codified at 29 C.F.R. § 2510.3-2(c) even if it were an ERISA plan, which it is not. [6]

### B.  STOCK OPTION AND UNIT INCENTIVE PLANS ARE NOT ERISA BENEFIT PLANS

Two recent decisions from the Northern District of Georgia have dealt with

---

[6] It is also instructive that the Unit Incentive Plan does not state that it is an ERISA plan which would have been included if the Unit Incentive Plan was established pursuant to and governed by ERISA.  The Unit Incentive Plan specifically states it is NOT an ERISA plan.

the issue of employee incentive stock option plans and have held that they are not subject to ERISA.  See *Cashman v. GreyOrange, Inc*., 2023 WL 2652789, (N.D. Ga. March 27, 2023 Slip Copy) and *Carvalhal v. GreyOrange, Inc*. (N.D. Ga. March 23, 2023, Case No. 1:22-CV-02070, Docket Numbers 21 and 22.)[7]

A program of compensation may constitute a pension benefit plan if it "provides retirement income to employees". 29 U.S.C. § 1002(2)(A)(i). "The words 'provides retirement income' patently refer only to plans *designed for the purpose of paying retirement income* whether as a result of their express terms or surrounding circumstance."  *Tolbert v. RBC Capital Markets Corp.,* 758 F.3d 619, 624 (5th Cir. 2014) (*quoting Murphy v. Inexco Oil Co.,* 611 F.2d 570, 575 (5th Cir. 1980) (emphasis in the original).  Therefore, a plan is not a "pension plan" under 29 U.S.C. § 1002(2)(A)(i) if the primary purpose of the plan is "to reward employees during their

---

[7] In *Cashman* defendant made a motion to dismiss on the grounds the plan was not an ERISA plan, plaintiff failed to state a claim and the court therefore lacked subject matter jurisdiction.  In *Carvalhal* the court made a determination that since the plan was not an ERISA plan plaintiff failed to state a claim. In this case, Defendant finds itself in the position of having federal ERISA claims asserted in state court. If Defendant moves to dismiss the claims in state court the state court could determine that it lacks jurisdiction over one or more of the ERISA claims since they are ERISA claims. Plaintiff could then file the claims in federal court and defendant would be in the position of having to first file a motion to dismiss in state court on the basis of lack of subject matter jurisdiction and then be compelled to file a motion to dismiss the ERISA claims in federal court for a determination that the Unit Incentive Plan is not an ERISA plan and subject to dismissal for failure to state a claim.

active years." *Murphy*, 611 F.2d at 574. The CharterUP Unit Incentive Plan was not designed for the purpose of paying retirement income. It was designed for the purpose of incentivizing employees, both through grants of unit options in recognition for contributions to the company, and through the growth in value of the options via company performance. Therefore, the first prong of ERISA's definition of an employee pension benefit plan does not apply.

A pension benefit plan is also defined as a plan that "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond". 29 U.S.C. § 1002(2)(A)(ii). In order for this prong of the definition to apply, the plan must be designed such that "employees must defer the income to the end of their employment or beyond." *Tolbert,* 758 F.3d at 625. In order to establish coverage under 29 U.S.C. § 1002(2)(A)(ii), it must be shown that by participating in a plan, employees "forewent income at some point in exchange for receiving income from [the plan] at a later date". *Id.* (*quoting Boos v. AT&T, Inc.,* 643 F.3d 127, 134 (5th Cir. 2011)).

Courts routinely rely upon the stated purpose of a stock option plan in determining that it is not subject to ERISA. *See, e.g.*, *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 932-33 (8th Cir. 1999) (stated purpose supported conclusion that plan did not provide retirement income); *Roderick v. Mazzetti & Assocs., Inc.*,

2004 WL 2554453, at *8 (N.D. Cal. Nov. 9, 2004), at *9 (plan purpose to provide employees with equity in company and to incentivize performance support conclusion that ERISA did not apply); *Adams v. Intralinks, Inc.*, 2004 WL 1627313, at *8 (S.D.N.Y. July 20, 2004) (holding plaintiffs' ERISA claim to be "wholly without merit" where, *inter alia*, the stated purpose of the plan was to incentivize employees); *Hahn v. Nat'l Westminster Bank, N.A.*, 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000) ("The Plan's express statement of purpose … is entitled to weight when determining the nature of the plan. Where, as here, a plan proclaims its intent to provide bonus compensation, a pension plan will not be found.").  As stated in *Cashman* at page 5:

> Here, by its express terms, the purpose of the GreyOrange Plan is to reward employees for their performance and to attract and retain talent. … Further, there is no indication that the GreyOrange Plan, by its express terms or by surrounding circumstances, systematically defers income to a time after employment is terminated. Although the GreyOrange Plan contemplates scenarios where stock options can be exercised after termination, retirement or other employment separation events, the GreyOrange Plan specifically contains provisions addressing the exercise of stock options *during* employment as well. Therefore, the Court finds it implausible that the GreyOrange Plan falls under the definition of an ERISA-governed pension plan.

Participants in the CharterUP Unit Incentive Plan do not defer (or forego) present income to a later date.  Rather, participants, including Plaintiff, received options to purchase units of the company at a price determined as of the date of grant,

15

exercisable during the term of their employment as provided in the Incentive Plan Option Agreement.

The mere fact that the Unit Incentive Plan at issue may provide an alternative means of exercising vested options in the event of termination of employment does not mean that the Unit Incentive Plan causes employees to defer income up to or beyond termination. Because the CharterUP Unit Incentive Plan does not fit within the statutory definition of an employee pension benefit plan, it is not subject to ERISA.

Alternatively, even if the Unit Incentive Plan were deemed to fit within the statutory definition, and Defendant states affirmatively it does not, it nevertheless remains outside of ERISA by operation of the 29 C.F.R. § 2510.3-2(c) exception for bonus programs. By virtue of the language of the Unit Incentive Plan and the description set forth within the Incentive Plan Option Agreement, the Unit Incentive Plan is a means of providing incentive (or bonus) compensation for work performed. Therefore, the exception precludes ERISA application unless the Unit Incentive Plan provides for "payments [that] are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R § 2510.3-2(c). As the name "bonus exception" implies, this regulation concerns bonuses, not deferred income or regular

16

compensation. *See Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 435 (6th Cir. 2019). Generally, plans that are subject to the bonus exemption will "state that the plan's express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention." *Id.* at 435–36; see, e.g., *Oatway*, 325 F.3d at 189; *Emmenegger at* 197 F.3d 933; *Hagel v. United Land Co.*, 759 F. Supp. 1199, 1201–02 (E.D. Va. 1991). Equity incentive plans that incorporate mechanisms for exercise and/or redemption during employment "will not come within the definition of an ERISA plan 'unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.'" *Emmenegger* at 197 F.3d 932, citing 29 C.F.R § 2510.3-2(c).

Accordingly, the CharterUp Unit Incentive Plan, which is indisputably an incentive plan, does not systematically defer income to termination or beyond and cannot be treated as an ERISA governed employee pension plan.  As such, Plaintiff's claim under ERISA §502(a)(1)(B) should be dismissed.

### III     DEFENDANT IS ENTITLED TO DISMISSAL OF THE ERISA CLAIM ASSERTED UNDER ERISA §510

Count V of Plaintiff's Complaint seeks relief pursuant to ERISA §510, 29 U.S.C. § 1140.  However, the Unit Incentive Plan is neither an employee benefit plan

nor a pension plan, it is not subject to ERISA, and Plaintiff may not assert a claim under ERISA §510 therein.

> ERISA § 510, codified at 29 U.S.C. § 1140 states:
>
> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

As discussed above, § 3 of ERISA defines the terms "employee benefit plan" or "plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). ERISA's reference to welfare and pension plans means that ERISA does not encompass plans which are neither welfare nor pension plan. The Supreme Court has held that there are only two kinds of plans under ERISA, stating that "ERISA defines a 'plan' to include both 'an employee welfare benefit plan [and] and employee pension benefit plan.'" *Inter–Modal Rail Employees Ass'n. v. Atchison, Topeka & Santa Fe Railway Co.,* 520 U.S. 510, 514, 117 S.Ct. 1513, 1515, 137 L.Ed.2d 763 (1997). *Accord American Fed. of Grain Millers v. International Multifoods Corp.,* 116 F.3d 976, 979 (2d

Cir.1997) ("ERISA contemplates two distinct kinds of employee benefit plans —

pension plans and welfare plans"); *In re Unisys Corp.,* 58 F.3d 896, 901 (3d

Cir.1995) ("ERISA recognizes two types of employee benefits, welfare benefits and

pension benefits"); *Murphy v. Inexco Oil Co.,* 611 F.2d 570, 574 (5th

Cir.1980) ("ERISA applies only to 'an employee welfare benefit plan or an

employee pension benefit plan or a plan which is both.'"); *Williams v. Wright,* 927

F.2d 1540, 1542 (11th Cir. 1991) (ERISA recognizes two types of plans, "employee

welfare benefit plans" and "employee pension benefit plans"). The plain meaning of

the statutory definition of plan —"an employee welfare benefit plan" and/or "an

employee pension benefit plan"— indicates that a plan must be a welfare and/or a

pension plan to qualify as an ERISA "plan." 29 U.S.C. § 1002(3).

In addition to the general limitation of ERISA to employee welfare plans and

employee pension plans Courts have specifically held that §510 is limited to

employee welfare plans and employee pension plans.  As stated in *West v Butler*,

621 F.2d 240, 245 (6th Cir. 1980) "Thus, it appears Congress designed §510

primarily to protect the employment relationship that gives rise to an individual's

pension rights."  In *Clark v. Coats & Clark, Inc*., 990 F.2d 1217, 1222 (11th Cir.

1993) the Court stated:  "The ultimate inquiry in a § 510 case is whether the

19

employer had the specific intent to interfere with the employee's ERISA rights."  In

*Owens v. Storehouse, Inc.*, 984 F.2d 394, 399 (11th Cir. 1993) the Court stated:

> [T]he record does not establish that Storehouse amended its plan to
> interfere with the "attainment of any right" to which Owens might have
> been entitled under section 510. The "right" referred to is not any right
> in the abstract. Rather, it is one specifically conferred by the plan or by
> ERISA.

In *Owens* at 984 F.2d 399 the court cited to *Conkwright v. Westinghouse Elec.*

*Corp.,* 933 F.2d 231, 237 (4th Cir.1991) "(holding that primary purpose of section

510 is to prevent unscrupulous employers from discharging or harassing employees

to prevent them **from obtaining vested pension rights**) (quoting *West v. Butler,* 621

F.2d 240, 245 (6th Cir.1980); *Lojek v. Thomas,* 716 F.2d 675, 680 (9th Cir.1983)).)"

(Emphasis added.)

    As discussed above, the Unit Incentive Plan is an incentive or bonus plan and

does not provide welfare benefits or pension or retirement benefits, the plan is not

subject to ERISA, and Plaintiff may not maintain a claim under §510.  Even if

incentives in the form of stock or options may be received post-termination or after

retirement that does not bring them within the purview of ERISA.  *See, e.g.,*

*McKinsey v. Sentry Ins.*, 986 F.2d 401, 405 (10th Cir. 1993) ("'[t]he words 'provides

retirement income' patently refer only to plans designed for the purpose of paying

retirement income' not simply to '[a]ny outright conveyance of property to an

20

employee that might result in some payment to him after retirement.'") (quoting *Murphy*, 611 F.2d at 575). Rather, courts distinguish between plans that principally provide compensation during employment but might result in post-employment payments and plans specifically designed to provide income after retirement. *See, e.g.*, *Murphy*, 611 F.2d at 575-76. The results demonstrate that incentive  bonus plans, like the Unit Incentive Plan, are consistently of the former class. Indeed, by its express terms, the Unit Incentive Plan does not require employees to wait until retirement to realize the value of their unit options and this fact alone dispels any notion that this is an ERISA qualified plan.

Based on the foregoing, Plaintiff may not bring a claim under ERISA §510 and the claim should be dismissed with prejudice.

## IV    DEFENDANT IS ENTITLED TO DISMISSAL OF THE ERISIA CLAIM ASSERTED UNDER ERISA § 502(g)

Furthermore, Plaintiff is not entitled to an award of attorney's fees under ERISA §502(g), 29 U.S.C. §1132(g).  Since the request for attorney's fees is necessarily contingent on the claims arising under ERISA §502(a)(1)(B) and §510, which are subject to dismissal, Plaintiff is not entitled to attorney's fees under §502(g) and that claim should likewise be dismissed with prejudice.

## **CONCLUSION**

Based on the foregoing, Defendant respectfully submits that it is entitled to dismissal of each of Plaintiff's causes of action asserted under ERISA with prejudice.

[SIGNATURE ON THE NEXT PAGE]

Respectfully submitted this 9th day of April 2024.

s/ Raymond L. Moss
Raymond L. Moss
Georgia Bar No. 526569
rlmoss@mossgilmorelaw.com
**MOSS & GILMORE LLP**
3630 Peachtree Road Suite 1025
Atlanta, Georgia 30326
Telephone No. (678) 381-8601
Facsimile No. (815) 364-0515

*Counsel for Defendant*
*CharterUP Holdings, LLC*
*now known as*
*CharterUp Technologies, LLC*

## **L.R. 7.1 CERTIFICATE**

Pursuant to L.R. 7.1D, counsel certifies that the foregoing complies with the font and point selections approved by the Court in L.R. 5.1C. This document was prepared using Times New Roman 14-point font.

Respectfully submitted on April 9, 2024.

/s/ Raymond L. Moss
Raymond L. Moss
Georgia Bar No. 526569

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record. Additionally, the document will be sent to counsel of record via United States mail:

Nancy B. Pridgen, Esq.
Pridgen Bassett Law, LLC
138 Bulloch Avenue
Roswell, GA 30075
Email: nancy@pridgenbassett.com

This 9th day of April 2024.

/s/ Raymond L. Moss
Raymond L. Moss
Georgia Bar No. 526569